**WO**                                                                                         JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Phillip Patch, | No. CV 08-0388-PHX-GMS (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, | |
| Defendant. | |

Plaintiff Kenneth Phillip Patch brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. #6).[1] Defendant filed a Motion to Dismiss for failure to exhaust administrative remedies (Doc. #9), which is fully briefed (Doc. ##11, 14).

The Court will grant Defendant's motion in part and deny it in part.

## I.   Background

Plaintiff's claims arose during his confinement at the Fourth Avenue Jail in Phoenix, Arizona (Doc. #6 at 1). In Count I, Plaintiff alleged that he is a minimum security pretrial detainee, yet he was housed with sentenced inmates who threatened him and stole his property (id. at 3). He claimed that Defendant was aware of the threat to pretrial detainees housed with sentence inmates and was warned about inmate assaults on other inmates (id.). In Count III, Plaintiff alleged that the noise level in the jail was

---

[1] On screening, the Court dismissed Haggart and Detention Officers I-XX as Defendants (Doc. #7).

excessive (id. at 5). And in Count IV, Plaintiff alleged that meals were non-nutritious and contained moldy and spoiled food (id. at 5a). Plaintiff requested monetary damages and injunctive relief (id. at 6).

The Court screened the First Amended Complaint, dismissed Counts II and V, and directed Defendant to file an answer (Doc. #7). Defendant then filed a Motion to Dismiss (Doc. #9).

**II.    Motion to Dismiss**

   **A.    Defendant's Contentions**

In his motion, Defendant contends that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, Defendant submits the affidavit of Susan Fisher, a Sergeant assigned to the Inmate Hearing Unit (id., Ex. 1, Fisher Aff. ¶ 1). Fisher describes the jail's grievance procedures, which are set out in Policy DJ-3 (id. ¶¶ 3, 5). The three-tiered grievance system includes an initial grievance and appeal to the Bureau Hearing Officer, the Institutional appeal, and the External Appeal (id. ¶ 5). Fisher attests that inmates are informed of the grievance procedures when they receive a copy of the "MCSO Rules and Regulations for Inmates" (id.). According to the sheriff's office grievance records, during his confinement Plaintiff filed five grievances regarding various conditions of incarceration (id. ¶ 8). Fisher avers that all five grievances were resolved and there were no appeals submitted (id.). In addition to the affidavit, Defendant submits a copy of the Inmate Grievance Procedure, Policy DJ-3 (id., Ex. A); excerpts from the "MCSO Rules and Regulations for Inmates" (id., Ex. B); and a "Grievance Listing" chart that lists Plaintiff's five grievances (id., Ex. D).

Defendant further argues that Plaintiff failed to show that he suffered actual physical injury and, therefore, his suit must be dismissed (id. at 5).

   **B.    Plaintiff's Response**

The Court informed Plaintiff of his obligation to respond and the evidence

- 2 -

1   necessary to successfully rebut Defendant's contentions (Doc. #10).[2]  Plaintiff opposes
2   Defendant's motion (Doc. #11).  He reiterates many of the factual allegations supporting
3   his First Amended Complaint (id.).  As to exhaustion, he argues that despite the grievance
4   procedures set out in the "Rules and Regulations for Inmates," in reality, it is difficult to
5   grieve issues because officers discourage or intimidate inmates from filing grievances,
6   refuse to accept grievance forms, fail to sign and date grievance forms, and/or retaliate
7   against inmates who file grievances (id. at 1-3).  Plaintiff notes that Defendant's evidence
8   suggests that Plaintiff filed only five grievances, but Plaintiff submits that he filed two
9   grievances on Inmate Request forms and seven grievances on the Inmate Grievance forms
10  (id. at 9).  He proffered copies of these forms along with two Inmate Institutional Appeal
11  forms (id., Exs.).

12         Plaintiff stated that jail staff only responded to some of his grievances about
13  inadequate food (Count IV); however, given those staff responses, he assumed that the
14  meal problems were corrected (Doc. #11 at 10).  Nonetheless, he explains that although
15  staff replaced the meals that gave rise to the grievances, the problems with spoiled food
16  continued (id. at 10-11).  With respect to the no-physical-injury argument presented by
17  Defendant, Plaintiff submits that during his jail confinement, he went from 189 pounds to
18  139 pounds and experienced digestive and sleeping problems (id. at 11).

19         As to his excessive noise claim (Count III), Plaintiff argues that he made one effort
20  to file a grievance but was told that if he did so, he would be transferred to 23-hour
21  lockdown protective custody (id. at 5).  Plaintiff states that in relation to his threat-to-
22  safety claim in Count I, his efforts to grieve were met with staff refusals to accept
23  grievance forms and more threats to move him to protective custody (id. at 7).

24         In addition to his the grievances about food, Plaintiff submitted grievance forms
25  regarding lockdown for punitive means against the entire housing pod (id., Attachs.); the
26  declaration of Jason Long, a fellow inmate (id., Long Decl.); and his own declaration (id.,
27
28
         [2]Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

- 3 -

1   Pl. Decl.). These declarations support the factual allegations in Plaintiff's First Amended
2   Complaint (id., Long Decl. & Pl. Decl.).

### C. Defendant's Reply

Defendant contends that Plaintiff's assertions that he could not grieve his claims due misconduct of jail staff are too general to excuse nonexhaustion (Doc. #14). He also argues that Plaintiff's food grievances were all promptly resolved, and Plaintiff offers no explanation why staff would be willing to resolve these grievances but not others (id. at 2). Defendant maintains that Plaintiff's evidence, including appeals he filed after initiating this action, fail to prove that he fully exhausted all administrative remedies (id.).

## III. Exhaustion

The PLRA provides that a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies have been exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007). Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

## IV. Analysis

### A. Count I - Threat to Safety

1    Defendant submits evidence that there exists a grievance system at the jail (Doc.
2 #9, Ex. 1, Fisher Aff. ¶¶ 3,5).  With regard to Count I, Plaintiff claims that jail staff
3 refused to accept his grievances and threatened to place him in protective custody; thus,
4 he was denied access to administrative remedies (Doc. #11).  But Plaintiff provides only
5 this general allegation that he attempted to grieve to no avail.  He has not alleged exactly
6 what transpired when he attempted to grieve his claim, nor has he specified who refused
7 to accept grievance forms, who threatened him, or when he made these attempts to grieve.
8 Without more specific allegations, Plaintiff cannot overcome Defendant's evidence
9 showing that a grievance system was available at the jail for the claim in Count I.

10    To the extent that Plaintiff implies that his attached grievances may relate to Count
11 I, the Court notes that outside of the grievances related to inadequate food, three
12 grievances and two appeals concern lockdowns at the jail (id., Attachs.).  Plaintiff
13 submitted these grievances in June and August 2008 (id.)  The appeals were submitted on
14 June 11, 2008, and November 6, 2007 (id.).  The PLRA requires exhaustion *before* an
15 action is filed.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see Vaden, 449
16 F.3d at 1051.  Plaintiff's First Amended Complaint was filed in April 2008; therefore, the
17 Court will consider only the appeal filed in November 2007.

18    A review of this appeal reflects that Plaintiff grieved an incident that occurred on
19 November 5, 2007, when the first shift officer instituted a 24-hour lockdown at the lower
20 tier where Plaintiff was housed.  During this lockdown period, video visits and church
21 services were restricted (Doc. #11, Attach., Inmate Institutional Disciplinary Appeal
22 dated Nov. 6, 2007).  In his appeal, Plaintiff complained that the lockdown was a "blanket
23 punishment" applied to all inmates, even though it was in response to an "issue"
24 involving just some inmates (id.).  Plaintiff grieved that this action punished pretrial
25 detainees and their visitors, none of whom were responsible for the "issue," and that the
26 lockdown deprived inmates of religious services and phone privileges (id.).  This
27 grievance is not related to the allegations in Count I, which Plaintiff specifically identified
28 as a threat-to-safety claim and which includes specific claims about exposure to sentenced

1  inmates in overcrowded pods and personal threats made against him by other inmates.
2  (Doc. #6 at 3). Consequently, this November 7, 2007 appeal does not demonstrate an
3  attempt to exhaust the claim in Count I.
4      On this record, Plaintiff failed to exhaust available administrative remedies for
5  Count I, and it will be dismissed without prejudice.

### B. Count III - Excessive Noise

7  Plaintiff states that he made one attempt to file a formal grievance about the
8  excessive noise caused by detention officers but when he did so, he was threatened (Doc.
9  #11 at 5). Plaintiff fails to allege when he made this attempt to file a grievance or who
10 threatened him. Again, without more specific allegations going to his attempt to grieve,
11 he cannot rebut Defendant's evidence that a grievance system was in place for this
12 complaint. And although Plaintiff makes general assertions that inmates are discouraged
13 by officers from filing grievances and officers retaliate by various means against inmates
14 who grieve issues (id. at 2-3), there is no explanation why he was still able to submit nine
15 grievances about meals but not a single grievance concerning the noise (see id.. #11, Exs.
16 (referring to grievances filed 7/11/07, 7/17/97, 7/21/07, 11/08/07, 12/09/07, 12/09/07,
17 1/11/08, 1/12/08, and 2/09/08)). The Court finds that Plaintiff's general claims that he
18 tried but was unable to grieve the claim in Count III are insufficient to survive
19 Defendant's motion to dismiss Count III for nonexhaustion.

### C. Count IV - Inadequate Food

21 Plaintiff specifically alleges that on June 1, 2007, he attempted to grieve his
22 complaint about food; he states that the floor officers on three different shifts all refused
23 to accept the grievance form (Doc. #11 at 9). Plaintiff submits copies of grievances he
24 was able to submit that complain about spoiled food, missing food, or reduced servings of
25 food (id., Exs.). He explains that when jail staff responded to these grievances, he
26 assumed that the basis for each grievance was corrected (id. at 10). Plaintiff states that on
27 some occasions, officers replaced his lunch bag; another time, one officer confirmed that
28 Plaintiff's food was spoiled; and once a dietician met with Plaintiff and described the

jail's food policies with regard to cooking turkey (id.). The written responses from staff evidence that Plaintiff's concerns were responded to by shift supervisors who confirmed receipt of spoiled food, replaced the food, and even advised Plaintiff "we will see to it that the spoiled turkey is put to a stop . . . fresh turkey was served today thus showing this issue is being taken care of" (id., Exs. (grievances dated 1/17/07, 7/21/07, and 12/09/07)).

In his reply, Defendant confirms that five grievances related to food were promptly resolved (Doc. #14 at 2).

The question on Count IV is whether Plaintiff was required to proceed with the appeal process after he received a resolution of the problem at a lower level in grievance procedure. Defendant offers no argument going to this question. In Brown, the Ninth Circuit held that if an inmate receives all the available remedies at an intermediate level of review, he need not proceed to further levels of review. See Brown, 422 F.3d at 935. This appears to be the case with Plaintiff. And without any suggestion or argument otherwise, Defendant has failed to meet his burden to demonstrate that Plaintiff was required to appeal his food grievances after jail staff provided remedies at the inmate grievance level. On this record, Defendant cannot show that Plaintiff failed to exhaust available administrative remedies.

### D.   Physical Injury

Defendant's remaining argument is that Plaintiff's claim must be dismissed because he makes no credible allegation that he suffered actual injury as required under § 1997e(e) of the PLRA (Doc. #9 at 5). In Oliver v. Keller, the Ninth Circuit determined that even absent physical injury, the prisoner-plaintiff was entitled to seek compensatory, nominal, and punitive damages premised on violations of his Fourteenth Amendment rights. 289 F.3d 263, 629-30 (9th Cir. 2002). The Court held that § 1997e(e) applied only to claims for mental and emotional injury and not to claims for relief for the underlying constitutional violations. Id.; see Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 107 (D. Mass. 2005) ("the violation of a constitutional right is an independent injury that is immediately cognizable and outside the purview of

§ 1997e(e)").

Here, Plaintiff did not bring a claim for mental and emotional injury; he brought a claim for the violation of his Fourteenth and Eighth Amendment rights (Doc. #6 at 3, 5, 5a (alleging violations of his due process rights and his right against cruel and unusual punishment)).  Under Oliver, these claims are not barred by § 1997e(e).

In sum, Defendant has failed to demonstrate nonexhaustion or any other ground for dismissal of Plaintiff's claim regarding inadequate food.  The Motion to Dismiss will be denied as to Count IV.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion to Dismiss (Doc. #9).

(2) Defendant's Motion to Dismiss (Doc. #9) is **granted in part** and **denied in part** as follows:

> (a) the motion is **granted** to Counts I (threat-to-safety) and III (excessive noise); Counts I and III are dismissed without prejudice; and
>
> (b) the motion is **denied** as to Count IV (inadequate food).

DATED this 28th day of January, 2009.

G. Murray Snow
United States District Judge

- 8 -