WO                                                                                              JDN

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kenneth Phillip Patch, | ) | No. CV 08-0388-PHX-GMS (DKD) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Joseph M. Arpaio, | ) | |
| Defendant. | ) | |

Plaintiff Kenneth Phillip Patch brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. #6).[1] Before the Court are the parties' cross-motions for summary judgment (Doc. ##48, 53), which are fully briefed, and Defendant's Motion to Strike Plaintiff's sur-reply (Doc. #91).

The Court will deny all pending motions.

**I.     Background**

Plaintiff's claim arose during his confinement at the Fourth Avenue Jail in Phoenix, Arizona (Doc. #6 at 1).[2] In his First Amended Complaint, Plaintiff alleged that meals at the jail were non-nutritious and inadequate (id. at 5a). He asserted that the two daily meals contained moldy and spoiled food, most often spoiled lunch meat (id.).

---

[1] On screening, the Court dismissed Haggart and Detention Officers I-XX as Defendants (Doc. #7).

[2] Plaintiff has since been transferred to the Arizona State Prison Complex-Winchester Unit in Tucson, Arizona (Doc. #15).

Plaintiff explained that he received a special diet bag but that it frequently contained spoiled turkey (id.). He claimed that for one period from June 1-July 29, 2007, he received spoiled meat on 24 days (id.). Plaintiff alleged that Defendant was responsible for the food policy as evidenced by his public statements that he is responsible for the food-service policy and that the undesirable food serves to discourage repeat offenders (id.). Plaintiff requested monetary damages and injunctive relief (id. at 6).[3]

Defendant moved to dismiss Plaintiff's claim for failure to exhaust administrative remedies (Doc. #9). The Court denied Defendant's motion as to Plaintiff's food claim because Defendant did not meet his burden to show that Plaintiff was required to proceed to the highest level of the appeal process after he received reliable information from officials at intermediate levels that the meal problems were resolved (Doc. #17 at 6-7). See Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

The Court issued a Scheduling Order (Doc. #19), and discovery commenced. The parties then submitted multiple filings regarding various discovery issues.

The summary judgment briefing was initiated in August 2009, when both parties filed summary judgment motions (Doc. ##48, 53). Plaintiff immediately filed a response to Defendant's motion (Doc. #55, resp. to Doc. #48), and Defendant filed his reply (Doc. #58).

Also in August, the Court issued an Order granting Plaintiff's motions for extensions of discovery deadlines (Doc. #54, granting Doc. ##41, 51). Thereafter, the Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendant's summary judgment motion; the Order provided additional time for Plaintiff to file a new response to Defendant's motion (Doc. #59). In November 2009, Plaintiff submitted his second response memorandum (Doc. #84), and Defendant filed a reply (Doc. #88). Plaintiff filed

---

[3]Plaintiff's First Amended Complaint set forth five claims for relief; Counts II and V were dismissed on screening (Doc. #7), and Counts I and III were dismissed on Defendant's Motion to Dismiss (Doc. #17).

a sur-reply (Doc. #89), and Defendant moved to strike the sur-reply (Doc. #91).

Meanwhile, Defendant filed his response to Plaintiff's summary judgment motion (Doc. #57, resp. to Doc. #53), but Plaintiff did not submit a reply.

**II.     Plaintiff's Motion for Summary Judgment**

    **A.     Parties' Contentions**

Although his motion is titled "Motion for Summary Judgment," Plaintiff's motion does not request summary judgment; rather, it moves the Court to (1) order Defendant to respond to interrogatories and requests for production of documents, (2) extend discovery deadlines, (3) accept written statements of witnesses, and (4) appoint him an attorney (Doc. #53).

Defendant opposes each of Plaintiff's requests (Doc. #57).

    **B.     Analysis**

After Plaintiff submitted his "Motion for Summary Judgment," the Court granted two of his motions for discovery extensions (Doc. #54, granting Doc. ##41, 51). The Court recently addressed and denied another request by Plaintiff to extend discovery deadlines (Doc. #93, denying #73). Because Plaintiff fails to show good cause for any further extensions, the pending request will be denied.

The Court's Order that granted Plaintiff's motion for discovery extensions also denied Plaintiff's request for reconsideration of another Order that denied Plaintiff's motion to accept witnesses' written statements (Doc. #54 at 2). Plaintiff again presents no basis for reconsideration; thus, his renewed request is denied.

Plaintiff's request that the Court direct Defendant to respond fully to interrogatories and request for documents is more appropriately set out in a motion to compel, which Plaintiff subsequently filed (Doc. ##77, 79). The Court denied those motions to compel on the grounds that the records sought were of marginal relevance, Plaintiff failed to comply with the Court's Scheduling Order regarding the filing of motions to compel, and discovery was closed prior to the filing of the motions to compel (Doc. #93 at 2-3). Plaintiff's pending motion does not comply with the Scheduling Order

1 and Federal Rule of Civil Procedure 37(a). And again, discovery has remained closed.
Therefore, Plaintiff's request to order responses will be denied.

Finally, Plaintiff's request for appointment of counsel will be denied without prejudice. There is no constitutional right for an indigent litigant to have appointed counsel in a civil case. Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980). The constitutional right of access to the courts requires that the state provide assistance only through the pleading stage. Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir. 1995). Plaintiff's case is beyond the pleading stage, so his right of access is not at issue and, thus, cannot justify appointment of counsel. Although 28 U.S.C. § 1915(e)(1) confers on a court the discretion to "request" counsel to represent an indigent civil litigant, this circuit has limited the exercise of that power to "exceptional circumstances," based upon such factors as the likelihood of success on the merits and the ability of the plaintiff to articulate his claims in light of their complexity. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). At this stage, the Court finds that the circumstances do not warrant appointment of counsel, particularly because Plaintiff offers nothing to show complexity of the issues in this case, which now involves a single claim against Defendant.

## III.   Defendant's Motion for Summary Judgment

As stated, Plaintiff's claim concerns the food service at the Fourth Avenue Jail, where he was in custody from December 29, 2006, to August 19, 2008 (Doc. #6 at 3; Doc. #85, Pl.'s Statement of Facts (PSOF) ¶ 27). Plaintiff is 5'6", and he asserts that during his confinement, he lost 55 pounds and that his weight was as follows:

| Date | Weight |
|---|---|
| December 29, 2006 | 189 pounds |
| January 23, 2007 | 176 pounds |
| July 25, 2007 | 154 pounds |
| January 23, 2008 | 139 pounds |
| August 19, 2008 | 134 pounds |

(Doc. #85, PSOF ¶ 27). Defendant does not dispute these weight-loss assertions (see Doc. #88).

### A.   Defendant's Contentions

Defendant seeks summary judgment on the grounds that (1) Plaintiff suffered no

- 4 -

1  physical injury, (2) the food served by the jail did not cause Plaintiff harm, (3) Plaintiff
2  did not exhaust administrative remedies, and (4) Plaintiff failed to allege or prove that
3  Defendant personally participated in any violation (Doc. #48).  In support of his motion,
4  Defendant submits a separate Statement of Facts (DSOF) (Doc. #49), which in turn is
5  supported by the declaration of Kundavaram S. Reddy, a Maricopa County Sheriff's
6  Office (MCSO) dietician (id., Ex. 1, Reddy Decl. ¶ 1); excerpts from Plaintiff's
7  deposition (id., Ex. 2, Pl. Dep., May 28, 2009); and the declaration of Robert Eastlund, a
8  MCSO lieutenant in the Bureau Hearing Unit, with attachments (id., Ex. 3, Eastlund Decl.
9  ¶ 1, Exs. A-C).

Defendant argues that under the Prison Litigation Reform Act (PLRA), Plaintiff must show actual, physical injury, but he has failed to do so (Doc. #48 at 3).

Defendant next argues that any harm Plaintiff suffered while in jail resulted from his pre-existing conditions and overall state of health (id.).  Defendant notes that when he entered jail, Plaintiff was 5'6" and 190 pounds, which is obese, and that prior to his incarceration, he suffered from acid reflux, diverticulitis, constipation, hemorrhoids, and irritable bowel syndrome (id. at 3-4).  Defendant maintains that while he was in custody, Plaintiff received the appropriate caloric intake for his age and activity level, which is what contributed to his weight loss (id. at 4).

Defendant renews his claim that Plaintiff failed to exhaust his administrative remedies as required under the PLRA (id.).  Defendant asserts that under the statute, all levels of the grievance process must be exhausted (id. at 5).  Defendant argues that there was a possibility of further corrective action had Plaintiff appealed to the External Referee and that Plaintiff's failure to appeal left jail officials with no notice that his food complaints were not resolved to his satisfaction (id. at 6-7).  Defendant submits that because Plaintiff indicated on his grievance forms that the complaints were resolved, jail officials were deprived of the opportunity to remedy the situation (id. at 7-8).

Finally, Defendant asserts that Plaintiff failed to allege or demonstrate that Defendant was personally involved in any alleged violation (id. at 8-9).  Defendant

1 | contends that Plaintiff's allegations regarding liability are conclusory and fail to show that
2 | Defendant knew of Plaintiff's food issues or had any involvement with Plaintiff's
3 | grievances (id.).

### B. Plaintiff's Response

Plaintiff opposes Defendant's Motion (Doc. ##55, 84). Plaintiff contends that there are genuine issues of material fact that would affect the outcome of this suit; thus, Defendant's motion should be denied (Doc. #84 at 3).

Plaintiff asserts that the extreme weight loss he suffered is clearly physical injury; he submits that the damage to his health is substantiated by photographs and medical evidence (id. at 4). And he argues that under Oliver v. Keller, he is entitled to seek damages even absent physical injury (id., citing 289 F.3d 623, 629-30 (9th Cir. 2002)).

Plaintiff next argues that there is no medical evidence to support Defendant's claim that Plaintiff's weight loss was caused by pre-existing conditions (Doc. #84 at 4). Plaintiff asserts that his pre-existing medical conditions did not cause weight loss because those conditions coexisted with his weight for many years (id. at 4-5). Plaintiff further asserts that although Defendant claims that Plaintiff was provided appropriate caloric intake for his age, when the meals included inedible and spoiled food, the caloric and nutrient levels dropped below a sufficient amount (id. at 5). He avers that the jail diet therefore caused his weight loss and caused him harm (id.; Doc. #55 at 6-8).

With respect to the exhaustion issue, Plaintiff asserts that he attempted to file grievances regarding the inadequate food but many of those grievances were rejected (Doc. #84 at 5). But he notes that he was able to file some grievances, and he points to the Court's Order addressing Defendant's Motion to Dismiss, which referred to nine grievances Plaintiff filed concerning meals (id., citing Doc. #17 at 6[4]). Plaintiff contends that he continued to seek relief but was assured that the issues were resolved (Doc. #84 at 6). Plaintiff states that these assurances were a temporary resolution, and when the

---

[4] The Court's Order cites to copies of these grievances found at Document #11 (Doc. #17 at 6).

problems continued he complained orally and in writing (id. at 7; Doc. #85, PSOF ¶ 21). He avers that he was repeatedly assured that the issues would be resolved and that further action was not required; thus, he maintains that the administrative remedies were exhausted to the extent that the system allowed (id. 22; Doc. #84 at 6). Plaintiff submits that Defendant had ample opportunity to address the problem and that Defendant knew about the meal problems because it was a systemic issue that generated hundreds of food grievances from inmates (Doc. #84 at 6).

Finally, Plaintiff argues that Defendant has asserted himself that he is responsible for keeping the county jail and setting policies (id. at 7). Plaintiff notes that this responsibility includes polices related to food and keeping costs low by accepting donated, expired food and serving spoiled meat, fruits, and bread (id. at 8). Plaintiff points to Defendant's numerous public appearances in which he has discussed food policies, and Plaintiff asserts that there have been numerous lawsuits filed against Defendant on this issue (id.; Doc. #85, PSOF ¶¶ 32-33).

In support of his opposition, Plaintiff submits his PSOF along with his own declaration (Doc. #85, Attach. 1); the declarations of former jail inmates Robin F. Snyder, John Raney, and Don B. Barrett (id., Attachs. 2-4); photographs of Plaintiff when he entered jail and when he left (id., Attachs. 5-6), and two articles about lawsuits against Defendant regarding jail conditions and food served to inmates (id., Attachs. 7-8).

### C. Defendant's Reply

In reply, Defendant again argues that weight loss does not constitute an injury (Doc. #88 at 2). Defendant contends that Ninth Circuit case law limits Plaintiff to nominal damages, without regard to the PLRA (Doc. #88 at 2-3). Defendant notes that Plaintiff does not attach any medical records or a medical affidavits to support his conclusory statements regarding the effects on his health due to weight loss (id.).

Defendant also contends that Plaintiff submits no evidence to show that his weight

1 loss was caused by inadequate food (id.).⁵ Defendant asserts that Plaintiff has failed to
2 show a sufficiently serious condition amounting to cruel and unusual punishment and that
3 Defendant acted with a sufficiently culpable state of mind (id. at 4). Defendant argues
4 that there was no deliberate indifference here because jail officials did not ignore
5 Plaintiff's concerns; rather, they met with Plaintiff and discussed his diet (id. at 4-5). In
6 response to the affidavits from other jail inmates, Defendant asserts that subjective food
7 complaints are insufficient to raise a genuine issue of fact (id. at 5).

As to exhaustion, Defendant argues that Plaintiff's claims that he orally grieved food complaints and that he met with officers does not satisfy the exhaustion requirement (id. at 6). Defendant submits that Plaintiff cannot circumvent the grievances procedures by devising his own process; rather, he must pursue every level of the jail's administrative procedure (id.).

Defendant argues that Plaintiff cannot establish liability, and that the proffered copies of news articles are inadmissible hearsay (id. at 7). Defendant maintains that there is no evidence that he knew of Plaintiff's complaints or about Plaintiff's weight loss (id.). Defendant contends that Plaintiff's claim is one for vicarious liability, which is not permitted under § 1983 (id.).

### D. Plaintiff's Sur-Reply

In his sur-reply, Plaintiff primarily repeats the arguments set forth in his opposition (Doc. #89). He adds that contrary to Defendant's contention, medical records supporting his health problems are clearly referenced in PSOF and by the Bates Numbers assigned to documents by Defendant (id. at 3). Plaintiff also argues that Defendant acted with deliberate indifference to what he knew was a pervasive problem that put inmates and a

---

⁵In his first reply memorandum, Defendant argues that Plaintiff's weight loss may have been attributable to medications that Plaintiff took while in jail, including laxatives, and Defendant provides significant details of Plaintiff's prescription medication while in custody (Doc. #58 at 3-4). Defendant did not raise this alternative-weight-loss argument in his second reply memorandum but, regardless, arguments raised for the first time in a reply may not be considered. United States v. Wright, 215 F.3d 1020, 1030 n. 3 (9th Cir. 2000).

substantial risk of harm (id. at 5-6).

Defendant moves to strike the sur-reply on the basis that it is not permitted under the Rules of Procedure (Doc. #91).

**IV.	Exhaustion**

    **A.	Procedure**

One of the grounds on which Defendant seeks summary judgment is exhaustion. When an exhaustion issue is raised in a motion for summary judgment, the court should treat it as a matter of abatement in an unenumerated motion under Rule 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988). Therefore, as to exhaustion, the Court will construe Defendant's motion as unenumerated Rule 12(b) motion.

    **B.	Legal Standard**

The PLRA requires a prisoner to exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza, 837 F.2d at 369 (quotation omitted).

    **C.	Analysis**

The grievance procedures at the Fourth Avenue Jail consist of five steps: (1) an initial grievance to an officer; (2) if unresolved, the grievance is forwarded to a Shift

- 9 -

1  Supervisor; (3) if still unresolved, the grievance is forwarded to the Hearing Officer; (4) if
2  the inmate feels that problem has not been resolved, he may appeal to the Jail
3  Commander; (5) and if unresolved by the Jail Commander, the final appeal is to the
4  External Referee (Doc. #49, Ex. 3, Eastlund Decl. ¶ 7 (a-f)).

5  There is no dispute that with respect to his complaints about food, Plaintiff did not
6  submit a final appeal to the External Referee. But Plaintiff did file a number grievances
7  about spoiled food and reduced servings of food (Doc. #11, Exs.).[6] Plaintiff's concerns
8  were responded to by Shift Supervisors who confirmed receipt of spoiled food, replaced
9  the food, and advised him that the issue was taken care of (id. (grievances dated 7/17/07,
10 7/21/07, and 12/09/07)). Plaintiff asserts that these responses led him to believe that the
11 issues had been resolved (Doc. #85, PSOF ¶ 19). Indeed, Defendant confirms that
12 Plaintiff's grievances were resolved (Doc. #48 at 6-7).

13 The question here is whether Plaintiff was required to proceed with the appeal
14 process after his complaints were resolved at a lower level in grievance procedure. In
15 Brown v. Valoff, the Ninth Circuit held that if an inmate receives all the available
16 remedies at an intermediate level of review, he need not proceed to further levels of
17 review. See Brown, 422 F.3d at 935.

18 Defendant argues that the instant action does not fall under Brown because in
19 Brown, there were no further remedies available to an inmate who filed a grievance
20 seeking information on an investigation into a defendant-officer's use of force (Doc. #48
21 at 5). Defendant asserts that here, further remedies were available had Plaintiff appealed
22 his grievance (id. at 7). Defendant submits that jail staff could have modified the manner
23 in which Plaintiff received meals by requiring officers to ensure that Plaintiff check each
24 meal and if it was incomplete, require a kitchen supervisor to correct the problem

---

[6] In support of his exhaustion argument, Defendant submits the declaration of Lieutenant Robert Eastlund, who asserts that he reviewed five of Plaintiff's food grievances that are attached to the declaration as Exhibit D (Doc. #49, Ex. 3, Eastlund Decl. ¶ 9); however, there does not appear to be any Exhibit D. The Court therefore refers to the grievance documents previously submitted by Plaintiff (see Doc. #11, Exs.).

immediately (id. at 7-8). Defendant also submits that if Plaintiff felt that his diet affected his health, the jail could have facilitated dialogue with medical and food services to devise a solution (id. at 8). Defendant concludes that because Plaintiff did not proceed with an appeal, there was no notice to officials that further action was needed and, thus, no additional corrective action could be instituted (id.).

Defendant's argument is insufficient to demonstrate that further remedies were, in fact, available to Plaintiff. In Brown, the Ninth Circuit's determination whether remedies were available turned on the officials' response to Brown's grievance. 422 F.3d at 941. There, although it was only the second step in a four-step grievance process, Brown was informed that "[y]our appeal is partially granted at the second level of review," and there was no information that any further review was available. Id. at 937. The Court found that the reasonable import of this response was that no further relief was available through the appeal process. Id.

Here, Plaintiff received the following responses to his food grievances:

(1) "I advised [Plaintiff] if he did receive any spoiled meat in the past that we are sorry . . . It will not be a problem if he has some spoiled turkey to receive a new bag" (Doc. #11, Exs. (grievance dated 7/17/07));

(2) "I advised [Plaintiff] that the Food Factory has been advised and we will see to it that the spoiled turkey is put to a stop . . . fresh turkey was served today thus showing this issue is being taken care of" (id. (grievance dated 7/21/07));

(3) Notation on grievance: "Staff: please call the Food Factory immediately if [Plaintiff's] food is spoiled or inadequate. Ask for a Sgt." (id. (grievance dated 12/9/07);

(4) "I apologize for the errors in portion size and quality that have occurred . . . I have spoken to the officer in charge of the special diet sacks and asked them to watch them more carefully. . . Please feel free to contact me via tank order or grievance form if you experience any future problems with your meal service" (id., grievance dated 2/9/08)).

The Court finds that is was reasonable for Plaintiff to infer from these responses that the issues were addressed or resolved and that no further appeal was necessary. Indeed, the last response specifically informed Plaintiff that if there were any more problems, he should file a new *grievance form*—not an appeal (id.). This situation is similar to that in Abney v. McGinnis, where the prisoner repeatedly obtained favorable rulings on his grievances but the defendants failed to subsequently implement the rulings.

- 11 -

380 F.3d 663, 669 (2d Cir. 2004). The prisoner's only available remedy was to file another grievance, which he did, and those grievances were resolved but again, the rulings were not implemented. Id. The Second Circuit found that to require a prisoner who wins on his grievance in principle to file another grievance to win in fact could lead to a never-ending cycle of grievances. Id. (citing Dixon v. Page, 291 F.3d 485, 490 (7th Cir. 2002)).

Defendant's contention that had Plaintiff appealed, he could have obtained further relief, is unpersuasive. The Ninth Circuit rejected similar defense arguments in Brown and indicated that there must be evidence that further available administrative remedies exist. 422 F.3d at 939-40.[7] Moreover, the additional relief that Defendant explains could have been obtained was actually provided. The grievance responses set out that Plaintiff's meals were to be checked and a kitchen supervisor would be notified if there were any problems (see Doc. #11, Exs.). And Defendant did not dispute Plaintiff's averments that in response to his grievances, he met with the jail's dietician and the kitchen supervisor (Doc. #85, Attach. 1, Pl. Decl. ¶¶ 21-22, 24-25). Thus, there is no evidence that additional relief was available to Plaintiff after these meetings with medical and kitchen personnel and after the grievance responses from the Shift Supervisors.

In conclusion, the Court finds that Defendant has not met his burden to demonstrate that further remedies were available to Plaintiff. Thus, the request for dismissal based on nonexhaustion will be denied.

**V.    Summary Judgment**

Defendant's remaining arguments—no physical injury, no proof that jail food caused harm, and no liability—are addressed in the summary judgment analysis.

---

[7]In Brown, the plaintiff's grievance set forth a complaint against the defendant-officer for using tear gas and assaulting Brown. 422 F.3d at 930. The defendant opined that there was potential relief available had Brown appealed beyond the second level of review; for example, defendant could have been moved to a different post, Brown could have been transferred to different location, or the prison could have modified its pepper spray policies. Id. at 939-40.

**A. Legal Standards**

*1. Summary Judgment Standard*

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

*2. Fourteenth Amendment*

Plaintiff was a pretrial detainee during his confinement at the Fourth Avenue Jail

- 13 -

(Doc. #6 at 3-5a). Pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, which provides that "detainees have a right against jail conditions or restrictions that 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)). The Fourteenth Amendment standard is more protective than the Eighth Amendment; "[t]his standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." Pierce, 526 F.3d at 1205; Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004). The Ninth Circuit has held that pretrial detainees' rights under the Fourteenth Amendment are nonetheless comparable to prisoner's rights under the Eighth Amendment. Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1216 (9th Cir. 2009).

Under the Eighth Amendment, courts must consider two components: (1) whether the deprivation was sufficiently serious to constitute "cruel and unusual punishment" and (2) whether the defendants acted with a "sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Similarly, under the Fourteenth Amendment analysis, to determine if government action constitutes punishment, courts must determine (1) whether the action caused the detainee to suffer some harm or 'disability,' and (2) whether the purpose of the action was to punish the detainee. Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing Bell, 441 U.S. at 538). The test for identifying unconstitutional punishment of pretrial detainees is whether there was an express intent to punish or whether there was an alternative purpose for the restriction and whether the restriction appears excessive in relation to this alternative purpose. Demery, 378 F.3d at 1028.

Not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. Bell, 441 U.S. at 537. To constitute punishment, the harm caused by the action or condition "must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery, 378 F.3d at 1030. A court should

look at the nature of the condition and whether it is reasonably related to a legitimate governmental objective. Pierce, 526 F.3d at 1205. If the condition or restriction is arbitrary or purposeless, a court may infer that the purpose of the action is punishment that may not be inflicted on pretrial detainees. Id. (citing Bell, 441 U.S. at 539).

### *3. Food*

Food served to inmates does not have to be tasty or aesthetically pleasing, and if meals occasionally contain foreign objects or are served cold, it does not amount to a constitutional deprivation. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). However, inmates must be provided food that is nutritionally adequate to maintain health and that is prepared and served in a manner that does not present a danger to the well being of inmates. Id.; Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir. 1980); see also Johnson v. Lewis, 217 F.3d 726, 731-32 (9th Cir. 2000) (identifying a cognizable constitutional violation where inmates alleged they were, *inter alia*, given spoiled food). Serving inmates a diet with insufficient calories for an extended period raises serious constitutional concerns. See Hutto v. Finney, 437 U.S. 678, 683-84, 686-87 (1978) (prison diet that consisted of just 1,000 calories a day may be tolerable for a few days but "intolerably cruel for weeks or months").

**B.** **Analysis**

### *1. Motion to Strike*

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Plaintiff did not seek leave to file his sur-reply, and the Rules of Procedure do not provide for a sur-reply. As explained herein, Defendant raises some arguments for the first time in his in reply memorandum, and that generally would provide a basis for filing a sur-reply. But because the Court has declined to address those improperly raised arguments, a sur-reply is unnecessary. See Wright, 215 F.3d at 1030 n. 3. Therefore, the Court will not consider Plaintiff's sur-reply, and the Motion to Strike will be denied as unnecessary.

### *2. Physical Injury*

1 | The Court previously addressed and rejected Defendant's contention that
2 | Plaintiff's claim fails because he did not meet the physical injury requirement under the
3 | PLRA (see Doc. #17). The holding in Oliver v. Keller, is still good law; thus, even absent
4 | physical injury, the PLRA does not bar Plaintiff's claim for damages premised on a
5 | violation of his constitutional rights (see Doc. #6 at 5a). 289 F.3d at 629-30.

As to the assertion that weight loss does not constitute an injury under the Fourteenth Amendment, Defendant presents only the dietician's general averment that weight loss, by itself is not an injury (Doc. #49, Ex. 1, Reddy Decl. ¶ 12). There is no medical evidence to demonstrate that the rate of Plaintiff's weight loss and his alleged loss of muscle mass and ability to work did not amount to compensable injury (see Doc. #85, Ex. 1, Pl. Decl. ¶¶ 16-18, 23, 32). Defendant's additional argument related to injury, which—instead of relying on the PLRA—argues only that Plaintiff must prove actual injury to merit compensatory damages, is improperly presented for the first time in the reply memorandum (Doc. #88 at 2-3). See Wright, 215 F.3d at 1030 n. 3. For these reasons, summary judgment on this basis will be denied.

### 3. Causation

"Causation is, of course, a required element of a § 1983 claim." Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999). Defendant argues that the jail food did not cause Plaintiff's weight loss; rather, the weight loss was due to Plaintiff's pre-existing conditions and the state of his health (Doc. #48 at 3-4). Defendant points to the declaration of the dietician, who avers that Plaintiff was provided the appropriate caloric intake for his age—2000 calories a day—and that the food was not spoiled (id.; Doc. #49, Ex. 1, Reddy Decl. ¶¶ 9-10, 18).

Plaintiff counters that because the meals regularly included spoiled food that he could not eat, he actually consumed less than the appropriate caloric intake (Doc. #84 at 5). The grievance documents reflect that jail officials acknowledged problems with the meal portions and the quality of food served to Plaintiff (see Doc. #11, Exs.). And, as stated, Defendant does not dispute that Plaintiff lost 55 pounds during his confinement.

Plaintiff asserts that he suffered on-going medical conditions for years at the same weight and did not lose weight until he was in jail, thereby indicating that his pre-existing conditions did not cause his weight loss (Doc. #85 at 4-5).

Both parties' arguments rest in large part on Plaintiff's medical condition before and during his confinement at the jail and the medical effects of his individualized weight loss. Neither party, however, submits any medical records or sworn statements from medical personnel to support their respective arguments. See Barcamerica Intern. v. Tyfield Importers, Inc., 289 F.3d 589, 593 n. 4 (9th Cir. 2002) (arguments and statements of counsel do not constitute evidence). Thus, on the limited record before the Court, which is construed in Plaintiff's favor, there is a genuine issue of material fact whether the jail food served to Plaintiff caused injury.

### *4. Liability*

Plaintiff does not allege direct personal participation by Defendant in the service of food; rather, he alleges liability based upon implementation of a policy that led to the alleged constitutional deprivation (Doc. #6 at 5a).

There is no *respondeat superior* liability under § 1983. City of Canton v. Harris, 489 U.S. 378, 387 (1989). But a supervisory official may be liable without overt participation if he implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the constitutional violation.'" Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citation omitted). The requisite causal connection may be established if the supervisor sets in motion "a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 1447. Liability also exists if the need to remedy a deficiency is so obvious, and the failure to act so likely to result in the violation of rights, that the policy-maker can be said to have been deliberately indifferent by failing to act. See Gibson v. County of Washoe, 290 F.3d 1175, 1194-95 (9th Cir. 2002). Thus, a supervisory official may be liable if he disregards a known or obvious consequence of his action or policy. See id. at 1194 (citation omitted).

1    Defendant argues that Plaintiff makes only conclusory allegations regarding
2    Defendant's responsibility for the food-service policy (Doc. #48 at 9). Defendant further
3    argues that Plaintiff submits no evidence that Defendant was involved in Plaintiff's
4    complaints or grievances or had any knowledge of them (id.). And Defendant asserts that
5    the articles referencing other lawsuits are inadmissible hearsay; thus, there is no evidence
6    that Defendant was aware of Plaintiff's particular situation (Doc. #88 at 7).

7    The Court finds that Defendant fails to offer any evidence to disprove Plaintiff's
8    liability claim, nor does Defendant directly deny Plaintiff's allegations. Defendant makes
9    no evidentiary showing either (1) that he was not responsible for the food-service policy
10   at the jail or (2) that he was unaware of the problems with spoiled food and inadequate
11   meal portions. See Richardson v. Runnels, No. 07-16736, --- F.3d ----, 2010 WL 276181,
12   at *5 (9th Cir. Jan. 26, 2010) (moving party must make some evidentiary showing to
13   support claim for summary judgment).

14   Although the newspaper articles proffered by Plaintiff are inadmissible, see Larez
15   v. City of Los Angeles, 946 F.2d 630, 642-43 (9th Cir. 1991) (newspaper articles,
16   unsupported by corroborating evidence, are generally inadmissible hearsay), the Court
17   may take judicial notice of court records in other cases. U.S. ex rel. Robinson Rancheria
18   Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 2002) (courts may take
19   judicial notice of proceedings in other courts "if those proceedings have a direct relation
20   to matter at issue"); see also MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir.
21   1986). In another proceeding in the District of Arizona, it has already been established
22   that Defendant is required to provide adequate food to pretrial detainees in county jails.
23   Graves v. Arpaio, CV 77-0479, 2008 WL 4699770, at *35 (D. Ariz. 2008). Moreover,
24   under state law, Defendant has final policy-making authority with respect to the operation
25   of the county jails. See Ariz. Rev. Stat. § 11-441(A)(5); Flanders v. Maricopa County, 54
26   P.3d 837, 847 (Ariz. Ct. App. 2002).

27   Contrary to Defendant's contention, Plaintiff's policy claim does not turn on
28   whether Defendant knew of Plaintiff's individual situation. Instead, it turns on whether

Defendant was aware of the food-service deficiencies at the jail and the need to remedy those deficiencies but failed to act despite the likelihood that the deficiencies would result in the violation of a detainee's right to adequate food. See Gibson, 290 F.3d at 1195. Defendant submits no evidence—such as his own affidavit—that he was unaware of the food-service problems at the jail. Consequently, Defendant cannot meet his burden to show the absence of a genuine issue of material fact regarding liability.

In sum, the Court finds that Defendant has failed to make an adequate evidentiary showing to warrant summary judgment, and his motion will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Summary Judgment (Doc. #53), and Defendant's Motion for Summary Judgment (Doc. #48) and Motion to Strike (Doc. #91).

(2) Plaintiff's Motion for Summary Judgment (Doc. #53) is **denied**.

(3) Defendant's Motion to Strike (Doc. #91) is **denied** as unnecessary.

(4) Defendant's Motion for Summary Judgment (Doc. #48) is **denied**.

DATED this 2nd day of February, 2010.

G. Murray Snow
United States District Judge